SHERMAN *v.* WILLIMAN.

1. REPLEVIN—CHIROPRACTOR'S OFFICE EQUIPMENT—PAYMENTS FOR
   GOOD WILL—FINDING OF COURT.

   In nonjury action of replevin of chiropractor's office equipment,
   evidence sustained finding of court that payments totalling
   $400 had been made for good will of business and not as pur-
   chase price of equipment pursuant to option-to-purchase
   agreement.

2. JUDGMENT—APPLICATION OF PAYMENTS—BACK RENT—PURCHASE
   OF OFFICE EQUIPMENT—RES JUDICATA.

   Where issue as to application of monthly payments, claimed by
   plaintiff to have been made on back rent and by defendant
   to have been made on purchase price of chiropractor's office
   equipment, had been settled adversely to defendant in an-
   other action to collect back rent, defendant could not pre-
   vail on such issue in replevin action.

3. REPLEVIN—POSSESSION—DEMAND.

   Where defendant in replevin action for chiropractor's office
   equipment admitted possession, demand, and refusal, and his
   right to possession was terminated when he moved out of the
   leased premises without having exercised option to purchase
   equipment within time limited therefor, plaintiff was en-
   titled to judgment for possession.

4. SAME—DAMAGES FOR DETENTION.

   Trial court's finding that plaintiff chiropractor, in replevin ac-
   tion, was entitled to damages in the amount of $15 per month
   for unlawful detention of office equipment *held,* proper under
   evidence presented.

REFERENCES FOR POINTS IN HEADNOTES
[1] 40 Am. Jur., Payment, §§ 110, 117.
[2] 30 Am. Jur., Judgments, §§ 163, 180.
[3] 46 Am. Jur., Replevin, §§ 54, 55.
[4] 46 Am. Jur., Replevin, § 173.

5. SAME—VALUE OF CHIROPRACTOR'S OFFICE EQUIPMENT.
    Value of chiropractor's office equipment, fixed by parties at
        $1,100 in 1942, is raised to $1,500 as of time of demand in
        1946 under evidence presented in replevin action.

Appeal from Wayne; Webster (Arthur), J. Submitted April 8, 1948. (Docket No. 42, Calendar No. 44,047.) Decided May 18, 1948.

Replevin by Max Kelvin Sherman against Anton C. Williman to recover possession of certain personal property. Judgment for plaintiff. Defendant appeals. Plaintiff cross-appeals. Remanded to fix value of goods at higher sum, otherwise affirmed.

*Willis C. Bullard,* for plaintiff.

*M. D. Smilay,* for defendant.

BOYLES, J. Plaintiff and defendant are licensed chiropractors. Prior to July 3, 1942, plaintiff had an office and equipment on Holden avenue in Detroit and was engaged in the practice. Knowing that he was about to be inducted into service in the armed forces, on the above date he entered into a written lease of his office and the equipment therein to the defendant for a term of two years, at an agreed rental of $55 per month. On the same date the parties entered into a separate written option agreement for the purchase and sale of the equipment, as follows:

"I hereby give you the option of buying all of the items on the attached inventory signed by both of us for the sum of $1,100 any time between the present date, July 3, 1942, and July 3, 1944. These items

may be purchased by a payment of $200 down and the balance at $15 per month.

"Sincerely yours,
(Signed) MAX KELVIN SHERMAN

"I approve and agree to the above.
(Signed) ANTON C. WILLIMAN"

Plaintiff claims that at the same time, the defendant verbally agreed to pay him $400 for the good will of the business. This the defendant denies. However, the defendant at that time gave the plaintiff $200 in cash and a promissory note for $200 payable in six months, with six per cent. interest. Eight months later this note was renewed by a second note payable in six months, with the same rate of interest, and later the interest was paid. On December 30, 1943, this second note was paid in full with interest to date.

In the meantime the defendant went into possession under the lease and paid $55 per month for a time, until the office of price administration (OPA) reduced the rent to $40 per month, based on a finding that the premises were predominantly used for dwelling purposes. Thereupon the defendant paid rent at the reduced rate for 18 months. At the end of that time the OPA made a second order reversing the first, concluding that the predominant use of the premises was for business purposes, and reinstating the original rental at $55 per month. Thereafter the defendant paid plaintiff's agent $55 per month rental, plus $15 each month which plaintiff claims was to pay up the arrearages of rent. The defendant claims that this was paid on the option agreement. After July 3, 1944, plaintiff's agent refused to accept several $15 payments for the reason that they were tendered to apply on the purchase price of the equipment.

The defendant remained in possession approximately three months after the expiration of the term

of the lease until sometime in October, 1944, and then moved out, taking the office equipment with him over the protest of plaintiff's agent. At that time demand was made on the defendant for return of the equipment, renewed several times by the plaintiff himself after he returned from the service February 1, 1946. On April 16, 19±6, plaintiff instituted the present suit in replevin for possession of the equipment. The case was heard by the court and judgment of return was entered in plaintiff's favor. The defendant appeals.

The court found that the $200 cash paid by the defendant and the $200 promissory note, later renewed and ultimately paid with interest, was for the good will of the business, and not payments on the option to purchase the equipment. We concur. There is ample proof to sustain the finding. Under the option, the defendant had two years in which to exercise the right to purchase, by paying $200 cash and by paying the balance at $15 per month. If the $200 cash which was paid when the option was signed had been a payment on the purchase price of the equipment, the written option agreement would doubtless have contained an acknowledgment of the down payment, or at least some receipt would have been given to that effect. Furthermore, there would have been no occasion at that time for the defendant to give a note for an additional $200 and pay interest on that sum.

Nor is there any merit in the defendant's present claim that the $15 per month was paid on the option and not on the lease. Plaintiff's agent, in the absence of any instructions to the contrary, credited these payments on back rent. While the instant replevin suit was pending the plaintiff brought suit against the defendant in the common pleas court for Detroit to recover the arrearages in rent. In that court the plaintiff prevailed, and on appeal to the circuit

court the plaintiff again prevailed. On jury trial the plaintiff had verdict for $120 arrearages in rent, and the jury expressly determined by its answers to special questions that the $15 payments were given to apply on back rent. In that case judgment was entered accordingly, and the payments having thus been credited on back rent the defendant cannot now prevail in his claim that such payments are to be credited on the equipment.

The defendant admits possession, demand for return and refusal. Defendant's right to possession of the equipment *under the lease* ended when he moved out in October, 1944, and the defendant has not exercised his right of purchase *under the option* during the time limited therefor, or complied with the terms thereof. Under such circumstances the judgment of return is affirmed.

Plaintiff raises two questions by cross appeal. The court fixed plaintiff's damages for unlawful detention at $15 per month. Plaintiff claims that under the undisputed testimony in the case he is entitled to $5 per day for unlawful detention. It is true that plaintiff's witness testified:

"As to rental, I would say $5 a day would be a very fair fee."

We agree that plaintiff is entitled to damages for unlawful detention from April 1, 1946, to the date of recovery of possession thereof by plaintiff, and the judgment so provides. The defendant is still in possession, having executed the statutory bond. Apparently plaintiff's claim for damages at $5 per day would be far in excess of the $1,100 he agreed to accept as the purchase price of the equipment. We concur with the trial court wherein he said:

"In my opinion, this is too high a rental value to fix. The parties in the option agreement provided for payments of $15 a month, and, in my opinion, the

damages for the detention of the property, under all the circumstances, are $15 per month."

Plaintiff on cross appeal also claims that the court erred in fixing $1,100 as the value of the equipment at the time of the demand (April 1, 1946). While plaintiff has not waived the return of the property or elected to take judgment for its value, circumstances might arise whereby the value would become of importance. Eleven hundred dollars was agreed upon as the purchase price as of July 3, 1942. The plaintiff called as a witness on the subject of value a doctor of chiropractic who had been engaged in that profession since 1918, who had held all of the offices in the State chiropractic organization. He testified that he was familiar with the value of chiropractic equipment and that the fair market value of the equipment as of July 3, 1944, would be $1,500. He testified further that "since July 3, 1944 the equipment has almost doubled in price, due to shortage of equipment."

The testimony clearly preponderates that the value of the equipment at the time of the demand was more than $1,100. The case is remanded for entry of judgment fixing the value at $1,500; and in all other respects the judgment is affirmed, with costs to appellee.

BUSHNELL, C. J. and SHARPE, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.